**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO:  24-33477 |
| | § | |
| GARRICK M. JACKSON, | § | CHAPTER 7 |
| | § | |
| | § | JUDGE JEFFREY P. NORMAN |
| Debtor. | § | |

**MOTION FOR RELIEF FROM THE STAY AND WAIVER OF**
**30-DAY HEARING REQUIREMENT**

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY.   IF YOU OBJECT TO THE GRANTING OF RELIEF FROM THE AUTOMATIC STAY, YOU SHOULD CONTACT THE MOVANT IMMEDIATELY TO TRY TO REACH AN AGREEMENT.  IF YOU CANNOT REACH AN AGREEMENT, YOU MUST FILE A WRITTEN RESPONSE AND SEND A COPY TO MOVANT NOT LATER THAN **NOVEMBER 6,** 2024, AND YOU MUST ATTEND THE HEARING.

THE COPY SENT TO THE MOVANT MUST BE DELIVERED BY HAND OR ELECTRONIC DELIVERY IF IT IS SENT LESS THAN 7 DAYS PRIOR TO THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE HEARING MAY BE EVIDENTIARY HEARING AND THE COURT MAY GRANT OR DENY RELIEF FROM THE STAY BASED ON THE EVIDENCE PRESENTED AT THIS HEARING.  IF A TIMELY OBJECTION IS FILED, THE COURT WILL CONDUCT A HEARING ON THIS MOTION ON **NOVEMBER 13**, 2024 AT **9:30** AM. THE INITIAL HEARING WILL BE TELEPHONIC. PARTIES IN INTEREST MUST CONSULT JUDGE NORMAN'S PROCEDURE (AVAILABLE ON THE COURT'S WEBSITE FOR DIAL IN INSTRUCTIONS)

1. This motion requests an order from the Bankruptcy Court authorizing the person filing this motion to foreclose on or to repossess the property that is identified in paragraph 3.

2. Movant:  NewRez LLC d/b/a Shellpoint Mortgage Servicing.

3. Movant, directly or as agent for the holder, holds a security interest in real property located at 1911 Alder Meadow Court, Rosenberg, TX 77469, and more particularly described as follows:

    LOT 7, BLOCK 2, WALNUT CREEK SECTION SEVEN, A SUBDIVISION IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT NO. 20150030, PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

4. Movant has reviewed Debtor's schedules but Debtor has not filed a Statement of Intention as of October 2, 2024.

5. Type of collateral (e.g., Home, Manufactured Home, Car, Truck, Motorcycle): Home

6. Debtor's scheduled value of property: $444,000.00.

7. Movant's estimated value of property: $416,482.00 (Fort Bend County Appraisal District)

8. Total amount owed to movant: $225,064.23 (which includes the unpaid principal balance of $209,023.83 as of September 26, 2024)

9. Estimated equity (paragraph 7 minus paragraph 8): $191,417.77 (after all other liens).

10. Total pre and post-petition arrearages: $18,524.49

11. Total arrearages: $18,524.49

12. Amount of unpaid, past due property taxes, if applicable: N/A

13. Expiration date on insurance policy, if applicable: N/A.

14. In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will also incur legal fees and costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code, paragraph 18 below, and otherwise applicable law.

15. __X__        Movant seeks relief based on the debtor's failure to make payments to the mortgage company. Debtor's payment history is attached as exhibit "D". Movant represents that the attached payment history is a current payment history reflecting all payments, advances, charges and credits from the beginning of the loan. Movant further represents that the payment history is self-explanatory or can be interpreted by application of coding information that is also attached. Movant acknowledges that the Court may prohibit the use of parole evidence to interpret a payment history that does not satisfy these representations.

16. _____.  Movant seeks relief based on the debtor(s)' failure to provide a certificate of insurance reflecting insurance coverage as required under the debtor's pre-petition contracts.

17. If applicable: Name of Co-Debtor: N/A

18. Movant certifies that prior to filing this motion an attempt was made to confer with the Debtor's either by telephone, by e-mail or by facsimile, by the following person on the following date and time: Hannah Ackley on October  2 , 2024 via E-mail to Debtor's Counsel.     An agreement could not be reached. If requested by debtor or debtor's counsel, a payment history in the form attached to this motion was provided at least two days, excluding intermediate weekends and holidays, before this motion was filed.

19. NewRez LLC d/b/a Shellpoint services the underlying mortgage loan and note for the property referenced in this motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

20. Movant requests that if stay is lifted Movant may contact the Debtor by telephone or written correspondence and, at it option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement regarding said real property.

Dated:  October  14, 2024              Respectfully submitted,

/s/Hannah Ackley
Hannah Ackley, Esq.
(TNBN: 036073)
PADGETT LAW GROUP
546 Silicon Dr., Suite 103
Southlake, TX 76092
(850) 422-2520 (telephone)
(850) 422-2567 (facsimile)
Hannah.Ackley@padgettlawgroup.com
Attorney for Creditor

## **Certificate of Service and Certificate of Compliance with BLR 4001**

A copy of this motion was served on the persons shown on exhibit "1" at the addresses reflected on that exhibit on October   14, 2024 by prepaid United States first class mail.  Movant certifies that movant has complied with Bankruptcy Local Rule 4001.


*/s/*Gina DeAngelo
Gina DeAngelo


EXHIBIT "1"

*Debtor*
Garrick M. Jackson
1911 Alder Meadow Ct
Richmond, TX 77469

*Attorney*
Alan D Borden
Resolve Law Group
801 Travis Street Suite 2021
Houston, TX 77002

*Trustee*
Ronald J Sommers
Ronald Sommers, Trustee
1400 Post Oak Blvd., Suite 300
Houston, TX 77056

*U.S. Trustee*
US Trustee
Office of the US Trustee
515 Rusk Ave
Ste 3516
Houston, TX 77002

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 24-33477 |
| | § | |
| GARRICK M. JACKSON, | § | CHAPTER 7 |
| | § | |
| | § | JUDGE JEFFREY P. NORMAN |
| Debtor. | § | |

## DECLARATION UNDER PENALTY OF PERJURY MOTION FOR RELIEF FROM AUTOMATIC STAY

1.     I am a/an *BK Case Manager* of NewRez LLC d/b/a Shellpoint Mortgage Servicing and am authorized to sign this declaration on behalf of NewRez LLC d/b/a Shellpoint Mortgage Servicing.  This declaration is provided in support of the Motion for Relief from Automatic Stay.

2.     As part of my job responsibilities, I have personal knowledge of the types of records maintained by NewRez LLC d/b/a Shellpoint Mortgage Servicing in connection with the account that is the subject of this motion (the **"Account"**), as well as the procedures for creating those records. I have access to and reviewed the books, records, and files held by NewRez LLC d/b/a Shellpoint Mortgage Servicing pertaining to the Account and extensions of credit given to the Debtor concerning the property securing such Account.

3.     The information in this declaration is taken from NewRez LLC d/b/a Shellpoint Mortgage Servicing's business records regarding the Account. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of NewRez LLC d/b/a Shellpoint Mortgage Servicing's regularly conducted business activities. It is the regular practice of NewRez LLC d/b/a Shellpoint Mortgage Servicing to create and maintain such records.

4.      Debtor executed and delivered the attached Note (the "**Note**") or is otherwise obligated under the Note. Pursuant to the attached Deed of Trust (the "**Security Instrument**"), all obligations of the Debtor under the Note and Security Instrument are secured by the property referenced in the motion.

5.      As of September 26, 2024, there are one or more defaults in paying amounts due with respect to the Note.

6.      As of September 26, 2024, the total amount necessary to payoff the account is $225,064.23, which includes interest, outstanding fees, and escrow advances.

The following chart sets forth the payments that are due pursuant to the terms of the Contract and have been missed by Debtor as of September 26, 2024:

| Number of Missed Payment | From | To | Missed Principal and Interest | Missed Escrow | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 2 | 02/01/2024 | 03/01/2024 | $932.48 | $1,153.11 | $2,085.59 | $4,171.18 |
| 6 | 04/01/2024 | 09/01/2024 | $932.48 | $1,529.54 | $2,462.02 | $14,772.12 |
| Less Partial Payments (Suspense): | | | | | | ($1,613.21) |
| **Total:** | | | | | | **$17,330.09** |

8.      As of September 26, 2024, the total arrearage/delinquency and amount necessary to cure the default alleged in the motion is $19,673.49, consisting of: (i) the foregoing total of missed payments in the amount of $18,943.30; plus escrow in the amount of $1,171.31; less the suspense balance of $1,613.21; plus (ii) the following fees:

| Description | Amount |
|---|---|
| Attorney Fees and Costs | $1,149.00* |
| Late Charges | $23.09 |

*The attorney fees and costs will be incurred upon the filing of this Motion

7.    The following documents are attached as exhibits and incorporated by reference:

   (a)    Attached as Exhibit A is a true and correct copy of the Note.

   (b)    Attached as Exhibit B is a true and correct copy of the Security

          Instrument.

   (c)    Attached as Exhibit C is a true and correct copy of the Loan Modification

          Agreement.

   (d)    Attached as Exhibit D is a true and correct copy of the Fort Bend County

          Apprisal District's Value report.

   (e)    Attached as Exhibit E are reinstatement figures.

I solemnly declare under the penalty of perjury and upon personal knowledge that the contents of the
foregoing paper are true.

Executed on 10/14/2024

Name: Karen L Eaton

Title: BK Case Manager

NewRez LLC d/b/a Shellpoint
Mortgage Servicing

Address: 55 Beattie Place

Greenville SC 29601

Contact Phone: 864-312-3754

Email: Karen.eaton@newrez.com

STATE OF South Carolina
COUNTY OF Greenville

Subscribed and sworn to before me on the date written above.

Notary Signature: _____
Printed Name: Phillip B Brown

My Commission Exp.: 3/23/28

PHILIP B. BROWN
NOTARY PUBLIC
COMM. EXP. 3-23-2028
SOUTH CAROLINA

# NOTE

**June 24, 2016**                                      Scottsdale,                                      **Arizona**
[Date]                                               [City]                                               [State]

1911 Alder Meadow Court, Rosenberg, TX 77469
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S.  **$299,907.00**          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is **On Q Financial, Inc..**

I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of **4.250 %.**
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

**3.   PAYMENTS**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making a payment every month.
    I will make my monthly payment on the **1st**          day of each month beginning on **August 1, 2016.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will
be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on
**July 1, 2046,**          I still owe amounts under this Note, I will pay those amounts in full on that date, which is
called the "Maturity Date."
    I will make my monthly payments at **4800 North Scottsdale Road #5500**
                                        **Scottsdale, AZ 85251**
or at a different place if required by the Note Holder.
    **(B) Amount of Monthly Payments**
    My monthly payment will be in the amount of U.S. **$1,475.36.**

**4.   BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under this Note.
    I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of
my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**
    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or
other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such
loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already
collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund
by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the
reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charge for Overdue Payments**
     If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue
payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C) Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)                                                            Initials:  _CX B_
Ellie Mae, Inc.                                      Page 1 of 2                             FHA3200NOT   0216
                                                                                            FHA3200NOT (CLS)
                                                                                            06/24/2016 07:53 AM PST

EXHIBIT "A"

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**GARRICK MICHAEL JACKSON**

_____ (Seal)
**BRITTANY TRENESE STERLING**

Lender: On Q Financial, Inc.
NMLS ID: ███
Loan Originator: Dustin Golden
NMLS ID: ███

**SEE ATTACHED ALLONGE**

**[Sign Original Only]**

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
Modified for FHA 9/15 (rev. 2/16)
Ellie Mae, Inc.                                    Page 2 of 2

Initials: ___ ___

FHA3200NOT   0216
FHA3200NOT (CLS)
06/24/2016 07:53 AM PST

## Allonge to Promissory Note:

For the purpose of further endorsement of the following described Note, this allonge is fixed and becomes a permanent part of said Note:

Loan Number:                    ███████

Original Principal Balance:  299,907.00

Borrower(s) Name:            Garrick Michael Jackson
                             Brittany Trenese Sterling

Note Date:                   06/24/2016

Property Address:            1911 Alder Meadow Court
                             Rosenberg, TX 77469

Pay to the order of:

**Ditech Financial LLC**

Without recourse

Correspondent:       On Q Financial, Inc.

By:
Typed Name:          Nelson De León
Title:               Chief Operating Officer

Pay to the order of,
**NewRez, LLC**
Without Recourse

Janet Dattilo
Authorized Signor
Ditech Financial LLC

# Allonge to Promissory Note

Loan Number

This Allonge is to be made a part of the Note:

**Dated:**                **6/24/2016**

**Borrower (s):**        **GARRICK MICHAEL JACKSON   BRITTANY TRENES STERLING**

**Property Address:**    **1911 ALDER MEADOW CT**

                         **ROSENBERG, TX   77469**

**Original Lender:**     **Ditech**

**Loan Amount:**         **$ 299907**

**Interest Rate:**       **4.75 %**

Without Recourse Pay To The Order Of:

**By:**

**Name:**        Arleen J Lemmon

**Title:**       Director,  Loan Fulfillment

**Company:**     NewRez LLC

JACKSON
SHEL

KASOTA
BO6428-GNMA

Jackson, Garrick 6/24/2016 Ditech



2016071865
ELECTRONICALLY RECORDED
Official Public Records
7/6/2016 12:44 PM

*Laura Richard*
Laura Richard, County Clerk
Fort Bend County Texas
Pages:    12    Fee: $ 55.00

When recorded, mail to:
On Q Financial, Inc.
Attn: Final Document Department
4800 North Scottsdale Road #5500
Scottsdale, AZ 85251

This document was prepared by:
Black, Mann & Graham, LLP
17744 Preston Road, #200
Dallas, TX 75252

*18*

[Space Above This Line For Recording Data]

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## DEED OF TRUST

FHA Case No. 

MERS PHONE #: 1-888-679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "**Security Instrument**" means this document, which is dated **June 24, 2016,**          together with all Riders to this document.

(B) "**Borrower**" is   **GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING, HUSBAND AND WIFE.**

Borrower is the grantor under this Security Instrument.
(C) "**Lender**" is   **On Q Financial, Inc..**

Lender is   **a Corporation,**                                                organized and existing under the laws of   **Arizona.**
Lender's address is   **4800 North Scottsdale Road #5500, Scottsdale, AZ 85251**

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "**Trustee**" is   **Gregory S. Graham.**

TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                        Page 1 of 10                    Initials: _GJ_ _BS_

TXEFHA15DE   0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

EXHIBIT "B"

Trustee's address is   **17744 Preston Road, #200, Dallas, TX 75252.**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated   **June 24, 2016.**        The Note states that Borrower owes Lender   **TWO HUNDRED NINETY NINE THOUSAND NINE HUNDRED SEVEN AND NO/100\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*** Dollars (U.S.  **$299,907.00**                  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1, 2046.**

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Planned Unit Development Rider
- ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**

[Type of Recording Jurisdiction]

of  **Fort Bend**

[Name of Recording Jurisdiction]:

**LOT 7, BLOCK 2, WALNUT CREEK SECTION SEVEN, A SUBDIVISION IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT NO. 20150030, PLAT RECORDS OF FORT BEND COUNTY, TEXAS.**

**TEXAS** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3044 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                 Page 2 of 10

Initials: _GĂ  BS_

TXEFHA15DE   0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

which currently has the address of   **1911 Alder Meadow Court, Rosenberg,**

[Street] [City]

**Texas  77469**          ("Property Address"):
   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1.   Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
   **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.
   **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     **Form 3044 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 3 of 10

Initials: _C.J BS_

TXEFHA15DE  0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3044 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                      Page 4 of 10

Initials: _G.S_ _BS_

TXEFHA15DE  0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3044 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                     Page 5 of 10

Initials: _____
TXEFHA15DE  0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3044 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                   Page 6 of 10

Initials: _G.S  BS_

TXEFHA15DE  0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**TEXAS – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    **Form 3044 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                       **Page 7 of 10**

Initials: _____

TXEFHA15DE   0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assign-ment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 24, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 24, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immedi-ate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**27. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3044 1/01**
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.

Initials: _G.J_  _BS_

TXEFHA15DE  0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**28. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**29. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ 6/24/16 (Seal)
GARRICK MICHAEL JACKSON

_____ 4/24/16 (Seal)
BRITTANY TRENESE STERLING

TEXAS – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3044 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                      Page 9 of 10

Initials: *G.J  BS*
TXEFHA15DE  0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST

State of _Texas_                                                    County of _Harris_

Before me, _Tamara Jenkins_____, on this day personally appeared
GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING, known to me (or proved to me on the
oath of _____ or through _photo id_____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this _24_ day of _June, 2016_

TAMARA LATRICE JENKINS
Notary Public
State of Texas
ID # ████
Comm. Expires 01/30/2020

_____
(Notary Public Signature)

**Lender: On Q Financial, Inc.**
**NMLS ID:** ████
**Loan Originator: Dustin Golden**
**NMLS ID:** ████

**TEXAS** – Single Family – **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3044 1/01
Modified for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc.                                       Page 10 of 10

Initials: _GJBS_
TXEFHA15DE   0915
TXEDEED (CLS)
06/24/2016 07:53 AM PST



## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **24th**               day of **June, 2016,**                    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **On Q Financial, Inc.**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**1911 Alder Meadow Court**
**Rosenberg, TX 77469.**

The Property Address is a part of a planned unit development ("PUD") known as
**Walnut Creek Section Seven**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:
   (i)  Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and
   (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.
   Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.                              Page 1 of 2              Initials: _____ _____
                                                                    FHA15PUDRD  0815
                                                                    P8700PUU (CLS)
                                                                    06/24/2016 07:53 AM PST



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
**GARRICK MICHAEL JACKSON**

_____ (Seal)
**BRITTANY TRENESE STERLING**

FHA Multistate PUD Rider - 9/2014
Ellie Mae, Inc.

Page 2 of 2

Initials: _____

FHA15PUDRD   0815
P8700PUU (CLS)
06/24/2016 07:53 AM PST

2019036806
ELECTRONICALLY RECORDED
Official Public Records
4/12/2019 3:02 PM



*Laura Richard*
Laura Richard, County Clerk
Fort Bend County Texas
Pages:      1        Fee: $ 13.25

# TRANSFER AND ASSIGNMENT

**TEXAS**
**COUNTY OF FORT BEND**

WHEN RECORDED MAIL TO: **FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402**

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR ON Q FINANCIAL, INC., ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN** 48501-2026, Assignor, does hereby grant, assign, and transfer to **NEWREZ MORTGAGE LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**, located at **55 BEATTIE PLACE, SUITE 110, MS#01, GREENVILLE, SC 29601**, Assignee, its successors and assigns, all Assignor's rights, title and interest in and to that certain Deed of Trust/Security Instrument dated **JUNE 24, 2016**, in the amount of **$299,907.00**, executed by **GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING, HUSBAND AND WIFE**, Trustor/Grantor, to **GREGORY S. GRAHAM**, Original Trustee, for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR ON Q FINANCIAL, INC., ITS SUCCESSORS AND ASSIGNS**, the Original Beneficiary/Grantee, recorded on **JULY 06, 2016** under Instrument No. **2016071865** in the Real Property Records of the County Clerk in and for **FORT BEND** County, State of **TEXAS**, said property described on said Deed of Trust/Security Instrument referred to herein:

**AS DESCRIBED IN SAID DEED OF TRUST/SECURITY INSTRUMENT**

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on _/4-10-19_.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**CYNTHIA MICHELLE BROCK, VICE PRESIDENT**

STATE OF **SOUTH CAROLINA**         COUNTY OF **GREENVILLE**     ) ss.

On _4-10-19_, before me, **TAMIAH B. KERNS**, personally appeared **CYNTHIA MICHELLE BROCK** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**TAMIAH B. KERNS (COMMISSION EXP. 04/21/2020)**
NOTARY PUBLIC

TAMIAH B. KERNS
MY COMMISSION
EXPIRES
4/21/2020
NOTARY PUBLIC
SOUTH CAROLINA

Page 1 of 1

**MERS PHONE: 1-888-679-6377**

2022004696
ELECTRONICALLY RECORDED
Official Public Records
1/10/2022 3:35 PM

Laura Richard, County Clerk
Fort Bend County Texas
Pages:      24        Fee: $ 108.00

**After Recording Please Return To:**
**ServiceLink**
**Attn: Loan Modification Solutions**
**3220 El Camino Real**
**Irvine, CA 92602**



*[Space Above This Line For Recording Data]*

# LOAN MODIFICATION AGREEMENT
# (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **16th** day of **December, 2021**, between **GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING** ("Borrower") and **NewRez LLC d/b/a Shellpoint Mortgage Servicing** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **June 24, 2016**, in the amount of **$299,907.00** and recorded on **July 6, 2016** in Book, Volume, or Liber No.        , at Page        (or as Instrument No. **2016071865**) , of the **Official** (Name of Records) Records of **FORT BEND, TEXAS** (County and State, or other jurisdiction) and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**1911 ALDER MEADOW CT, ROSENBERG, TX 77469**
(Property Address)

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

**ADDITIONAL ATTACHMENTS ATTACHED HERETO AND MADE A PART HEREOF**
- **LOAN MODIFICATION AGREEMENT RIDER**
- **NOTICE OF NO ORAL AGREEMENT**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   As of **March 1, 2022**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$217,678.18**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

EXHIBIT "C"

2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.125%** from **February 1, 2022**. Borrower promises to pay monthly payments of principal and interest of **$932.48** beginning on the **1st** day of **March, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The new Maturity Date will be **February 1, 2052**. Borrower's payment schedule for the modified Loan is as follows:

| No. of Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begin Date |
|---|---|---|---|---|---|---|
| **360** | **3.125%** | **02/01/2022** | **$932.48** | **$1,116.02** May adjust periodically | **$2,048.50** May adjust periodically | **03/01/2022** |

*The escrow payment may be adjusted periodically in accordance with applicable law; Therefore, my total monthly payment may change accordingly.

3.    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially

incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f)  Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify

Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

6.   Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the

Funds.  Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

Date: 12/21/2021

Borrower - **GARRICK MICHAEL JACKSON**

Date: 12/21/2021

Borrower - **BRITTANY TRENESE STERLING**

## ACKNOWLEDGMENT

State of _Texas_

County of _Fort Bend_

§
§
§

This instrument was acknowledged before me on _December 21, 2021_ by **GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING**.

_Erica F Harris_
Signature of Officer

_Erica F Harris_
Printed Name

_Notary_
Title of Officer

(Seal)

My Commission Expires: _9/20/2025_

_Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument_
Page 6 of 8                                                          21172TX 05/21

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**NewRez LLC d/b/a Shellpoint Mortgage Servicing**

By: _____     12/27/2021

_____ -Lender     _____
Shelby Saunders, *Supervisor*            Date of Lender's Signature

## ACKNOWLEDGMENT

State of ___**South Carolina**___     §
                                      §
County of ___**Greenville**___        §

    The foregoing instrument was acknowledged before me this 12/27/2021 _____ by
**Shelby Saunders** , *Supervisor* _____ of NewRez LLC d/b/a
**Shellpoint Mortgage Servicing a Pennsylvania Corporation**, on behalf of the Corporation.

_____
Signature of Person Taking Acknowledgment

JANIESE TERRY-CALWILE
Notary Public, State of South Carolina
My Commission Expires 1/8/20?1

Janiese Terry-Calwile
_____
Printed Name

Notary public
_____
Title or Rank

Serial Number, if any: _____

(Seal)     My Commission Expires: 1/8/2031

**EXHIBIT A**

**BORROWER(S): GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING**

███████████████████████

**LEGAL DESCRIPTION:**

**STATE OF TEXAS, COUNTY OF FORT BEND, AND DESCRIBED AS FOLLOWS:**

**LOT 7, BLOCK 2, WALNUT CREEK SECTION SEVEN, A SUBDIVISION IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT NO. 20150030, PLAT RECORDS OF FORT BEND COUNTY, TEXAS.**

**ALSO KNOWN AS: 1911 ALDER MEADOW CT, ROSENBERG, TX 77469**

████████████████████████████

███████████

Borrowers ("Borrower"):  **GARRICK MICHAEL JACKSON** and **BRITTANY TRENESE STERLING**

# LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this **16th** day of, **December, 2021**, by and between the undersigned borrower (the "Borrower") and **NewRez LLC d/b/a Shellpoint Mortgage Servicing,** (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

## 1.  Errors and Omissions

("Borrower") agrees, upon request of Lender, its successors or  assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder.  Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification and Note Holder may pursue its available remedies.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

_____        Date: 12 / 21, 2021
Borrower - **GARRICK MICHAEL JACKSON**

_____        Date: 12 /21/2021
Borrower - **BRITTANY TRENESE STERLING**

███████████

Lender:  **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

Loan Number:
Loan Amount:  **$217,678.18**

Borrower:  **GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING**
Property Address:  **1911 ALDER MEADOW CT, ROSENBERG, TX 77469**

# TEXAS LOAN AGREEMENT NOTICE

Section 26.02(b) of the Texas Business & Commerce Code provides as follows:
  A Loan agreement in which the amount involved in the Loan agreement exceeds $50,000 in value is not
  enforceable unless the agreement is in writing and signed by the party to be bound or by that party's
  authorized representative.

You are hereby notified that:

  **THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN
  THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,
  CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

  **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Lender:  **NEWREZ LLC D/B/A SHELLPOINT
MORTGAGE SERVICING**

By: _____

Date: _____

| | | | |
|---|---|---|---|
| **GARRICK MICHAEL JACKSON** | Date | **BRITTANY TRENESE STERLING** | Date |
| | Date | | Date |
| | Date | | Date |

Lender:          **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

Loan Number:
Loan Amount:    **$217,678.18**

Borrower:        **GARRICK MICHAEL JACKSON AND BRITTANY TRENESE STERLING**
Property Address:  **1911 ALDER MEADOW CT, ROSENBERG, TX 77469**

# TEXAS LOAN AGREEMENT NOTICE

Section 26.02(b) of the Texas Business & Commerce Code provides as follows:

    A Loan agreement in which the amount involved in the Loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

You are hereby notified that:

    **THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

    **THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Lender: **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

By: _____    **Shelby Saunders, Supervisor**

Date: __12/27/2021_____

| | | | |
|---|---|---|---|
| **GARRICK MICHAEL JACKSON** | Date | **BRITTANY TRENESE STERLING** | Date |
| | Date | | Date |
| | Date | | Date |

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | |
|---|---|
| GARRICK MICHAEL JACKSON          (Date) | BRITTANY TRENESE STERLING          (Date) |
| (Date) | (Date) |

# 🔖 Property Details

## Account

| | |
|---|---|
| **Quick Ref ID:** | ██████ |
| **Type:** | Real Residential | **Zoning:** | |
| **Property Use:** | | **Condo:** | |

## Location

| | |
|---|---|
| **Situs Address:** | 1911 Alder Meadow CT, Rosenberg, TX 77469 |
| **Map ID:** | Z-146 | **Mapsco:** |
| **Legal Description:** | Walnut Creek Sec 7, BLOCK 2, Lot 7 |
| **Abstract/Subdivision:** | 8914-07 - Walnut Creek Sec 7 |
| **Neighborhood:** | 5290 |

## January 1 Owner ❓

🔗 View Linked Properties ▾

| | |
|---|---|
| **Owner ID:** | ██████ |
| **Name:** | Jackson Garrick Michael & Brittany Trenese Sterling |
| **Agent:** | |
| **Mailing Address:** | 1911 Alder Meadow CT<br>Richmond, TX 77469-1112 |
| **% Ownership:** | 100.00% |
| **Exemptions:** | HS - Homestead<br>For privacy reasons not all exemptions are shown online. |

# 🔖 Property Values

| | |
|---|---|
| **Improvement Homesite Value:** | $356,677 (+) |
| **Improvement Non-Homesite Value:** | $0 (+) |
| **Land Homesite Value:** | $93,844 (+) |
| **Land Non-Homesite Value:** | $0 (+) |
| **Agricultural Market Valuation:** | $0 (+) |

EXHIBIT "D"

| Value Method: | COST |
|---|---|
| Market Value: | $450,521 (=) |
| Agricultural Value Loss:❓ | $0 (-) |
| | |
| HS Cap Loss/Circuit Breaker: ❓ | $34,039 (-) |
| | |
| Appraised Value: | $416,482 |
| Ag Use Value: | $0 |

**The deadline to protest this property is May 15, 2024**

Information provided for research purposes only. Legal descriptions and acreage amounts are for Appraisal District use only and should be verified prior to using for legal purpose and or documents. Please contact the Appraisal District to verify all information for accuracy.

## 🔖 Property Taxing Jurisdiction

**Owner:** Jackson Garrick Michael & Brittany Trenese Sterling **%Ownership:** 100.00%

| Entity | Description | Market Value | Taxable Value |
|---|---|---|---|
| D01 | Fort Bend Drainage | $450,521 | $333,186 |
| G01 | Fort Bend General | $450,521 | $333,186 |
| M208 | Fort Bend MUD 152 | $450,521 | $416,482 |
| S01 | Lamar CISD | $450,521 | $316,482 |

**Total Tax Rate:** 0.000000

## Reinstatement Balance -

### LOAN DETAILS

| | |
|---|---|
| LoanID: | |
| Due Date: | 2/1/2024 |
| Current Principal Balance: | $209,023.83 |
| Escrow Balance: | ($12,654.77) |
| Unapplied Balance: | $1,613.21 |
| Late Charge Balance: | $22.50 |
| NSF Fee Balance: | $0.00 |
| Legal Fee Balance: | $0.00 |
| Accrual Balance: | $0.00 |
| Other Fees Balance: | $0.59 |
| Figure Good Thru Date: | 9/26/2024 |

### BORROWER INFO

| | |
|---|---|
| Primary Borrower Name: | JACKSON, GARRICK MICHAEL |
| Co Borrower Name: | TRENESE STERLING, BRITTANY |

### REINSTATEMENT FIGURES

| | |
|---|---|
| Total PITI Payments Due: | $18,943.30 |
| Default Interest Due: | |
| Total Corp Adv/Late/NSF/Atty Fees: | $23.09 |
| Unapplied Balance: | ($1,613.21) |
| Escrow Required: | $1,171.31 |
| Outstanding FC Fees & Costs: | $0.00 |
| **Total Reinstatement Figure*:** | **$18,524.49** |

*(Total PITI + Fees + Unapplied + Escrow Required + FC Fees & Costs)

The account may not be funded for the coming year

### PAYMENTS DUE DETAIL

| Due Date | Interest Rate | Prin & Int Pmt | Escrow Pmt | Total Payment | Principal Amount | Interest Amount | Principal Bal |
|---|---|---|---|---|---|---|---|
| 2/1/2024 | 3.125% | $932.48 | $1,153.11 | $2,085.59 | $388.15 | $544.33 | $208,635.68 |
| 3/1/2024 | 3.125% | $932.48 | $1,153.11 | $2,085.59 | $389.16 | $543.32 | $208,246.52 |
| 4/1/2024 | 3.125% | $932.48 | $1,529.54 | $2,462.02 | $390.17 | $542.31 | $207,856.35 |
| 5/1/2024 | 3.125% | $932.48 | $1,529.54 | $2,462.02 | $391.19 | $541.29 | $207,465.16 |
| 6/1/2024 | 3.125% | $932.48 | $1,529.54 | $2,462.02 | $392.21 | $540.27 | $207,072.95 |
| 7/1/2024 | 3.125% | $932.48 | $1,529.54 | $2,462.02 | $393.23 | $539.25 | $206,679.72 |
| 8/1/2024 | 3.125% | $932.48 | $1,529.54 | $2,462.02 | $394.25 | $538.23 | $206,285.47 |
| 9/1/2024 | 3.125% | $932.48 | $1,529.54 | $2,462.02 | $395.28 | $537.20 | $205,890.19 |
| | | Total Payments Due: | | $18,943.30 | Count: | 8 | |

**Please add any outstanding foreclosure fees and costs to this reinstatement



shellpoint.

EXHIBIT "E"

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE: § CASE NO:  24-33477
§
GARRICK M. JACKSON, § CHAPTER 7
§
§ JUDGE JEFFREY P. NORMAN
Debtor. §

### ORDER GRANTING RELIEF FROM AUTOMATIC STAY AFTER HEARING
#### (This Order Resolves Docket #_____)

NewRez LLC d/b/a Shellpoint Mortgage Servicing, ("Movant") filed a motion for relief from the automatic stay against certain real property located at 1911 Alder Meadow Court, Rosenberg, TX 77469, and more particularly described as follows:

**LOT 7, BLOCK 2, WALNUT CREEK SECTION SEVEN, A SUBDIVISION IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN PLAT NO. 20150030, PLAT RECORDS OF FORT BEND COUNTY, TEXAS.**

(the "Property"). Movant represented to the Court that it had served the motion in accordance with all applicable rules and provided notice of the hearing.

_____ Although a response opposing the motion was filed, the respondent did not appear at the hearing. Therefore, the response is overruled for want of prosecution and the motion is granted.

_____ The Debtor filed a response that the Debtor was not opposed to the requested relief and no other party opposed the requested relief.

_____ The Debtor filed a response that the Debtor were unable to admit or deny the allegations, the Debtor failed to appear at the hearing, and no other party opposed the requested relief.

_____ After hearing, and for the reasons stated on the record, relief from the stay is granted.

_____ No timely response was filed. Accordingly, the motion is granted by default.

_____ As shown by Debtor counsel signature below, Debtor have agreed to the requested relief.

Accordingly, it is ordered that Movant is granted relief from the automatic stay [and the co-DEBTOR stay] to pursue its state law remedies against the Property, including foreclosure, repossession and/or eviction. Further, Movant may contact the DEBTOR by telephone or written correspondence and, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

_____ Movant is awarded attorney's fees in the amount of $_____.

_____ The stay imposed by Bankruptcy Rule 4001(a)(3) does not apply for the reasons stated on the record.

Signed _____

_____
HONORABLE JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE